In the Matter of S. H. KRESS AND COMPANY, Appellant, against THE DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK, Respondent.

Argued March 7, 1940; decided April 26, 1940.

56

*Joseph M. Lonergan* for appellant. The city cannot prohibit what the State specifically permits nor can the city permit what the State prohibits. (*Village of Fleischmanns* v. *Hyman*, 164 Misc. Rep. 175; *People ex rel. Kieley* v. *Lent*, 166 App. Div. 550; *Lechner* v. *Village of Newark*, 19 Misc. Rep. 452; *People* v. *Gilbert*, 68 Misc. Rep. 48; *Wood* v. *City of Brooklyn*, 14 Barb. 425; *Mayor* v. *Nichols*, 4 Hill, 209; *Schieffelin* v. *Dolan*, 204 App. Div. 351; *Jewish Consumptives Relief Society* v. *Town of Woodbury*, 230 App. Div. 228; 256 N. Y. 619; *Carvallo* v. *Cooper*, 239 N. Y. Supp. 436; *Lo Tempio* v. *City of Niagara Falls*, 166 Misc. Rep. 338; *State* v. *Brittain*, 89 N. C. 574; *People* v. *N. Y. C. & H. R. R. R. Co.*, 159 App. Div. 329; *City of New York* v. *Maltbie*, 274 N. Y. 90; *Matter of Bushell* v. *City of New York*, 242 App. Div. 366; *Robertson* v. *Zimmerman*, 268 N. Y. 52.)

*William C. Chanler, Corporation Counsel* (*Edmund L. Palmieri* and *Francis J. Bloustein* of counsel), for respondent. The Board of Health acted within the reasonable and proper exercise of its authority in forbidding the manufacture of frozen desserts in cellar premises. (*People* v. *French Bottling Works*, 259 N. Y. 4; *Bandel* v. *City of New York*, 69 Misc. Rep. 93; 144 App. Div. 938; *People* v. *New York Steam Corp.*, 278 N. Y. 617; *Price* v. *Illinois*, 238 U. S. 446; *Tenement House Department* v. *Moeschen*, 179 N. Y. 325; 203 U. S. 583; *City of Rochester* v. *Gutberlett*, 211 N. Y. 309; *South Carolina State Highway Dept.* v. *Barnwell Bros., Inc.*, 303 U. S. 177.) There is no conflict between the State Department of Agriculture and Markets and the Board of Health of the City of New York. (*Cherubino* v. *Meenan*, 253 N. Y. 462; *Polinsky* v. *People*, 73 N. Y. 65; *People* v. *Steinhardt*, 245 N. Y. 553; *People ex rel. N. Y., N. H. & H. R. R. Co.* v. *Willcox*, 200 N. Y. 423; *Crossman* v. *Lurman*, 192 U. S. 189; *Lang's Creamery, Inc.*, v. *City of Niagara Falls*, 251 N. Y. 343; *People* v. *Frudenberg*, 155 App. Div. 199; 209 N. Y. 218; *People ex rel. Lodes* v. *Department of Health*, 189 N. Y. 187.)

CONWAY, J. By article 4-A, sections 71-a to 71-j, of the Agriculture and Markets Law (Cons. Laws, ch. 69) the State has set up a complete and comprehensive scheme for controlling the manufacture and sale of frozen desserts, which by definition include ice cream. Those sections provide, among other things, for the application for, issuance of and revocation or suspension of licenses and, finally in section 71-j, for the adoption and promulgation by the Commissioner of the Department of Agriculture and Markets, after inquiry and public hearing, of rules and regulations to supplement and give full effect to the provisions of the article. The section then continues: " Such rules and regulations, among other things, shall establish sanitary regulations pertaining to the manufacture and distribution of frozen desserts, *including the sanitary condition of buildings,* grounds, *and equipment* where frozen desserts are manufactured, the sanitary condition of persons in direct physical contact with

frozen desserts during manufacture, the sanitary condition of containers in which frozen desserts are held or shipped and the sanitary conditions of premises, buildings, surroundings, and equipment where frozen desserts are sold. Such rules and regulations shall be filed and open for public inspection at the principal office of the department, and shall have the force of law."

Pursuant to the authority so given him by section 71-j, the Commissioner adopted Regulation 6 of the Rules and Regulations Relative to Frozen Desserts which provides that there shall be no manufacturing of frozen desserts in a cellar of any building in the State, unless the Commissioner shall grant special permission therefor.

The statute, and the rules and regulations adopted in pursuance thereof, which have the force of law, thus cover in detail the conditions under which frozen desserts are to be manufactured and by their terms cover, and were intended to cover, the entire field.

The petitioner-appellant is the owner of a department store at 444 Fifth avenue, Manhattan, New York city. It applied to the Commissioner of Agriculture and Markets for a license to manufacture frozen desserts in the cellar of its premises for sale at retail. *Written permission was granted in February, 1939.*

Petitioner then applied to respondent for a permit to manufacture and sell at retail, frozen desserts. *That application was denied in March, 1939.* Before denying it the Commissioner of Health wrote:

" In a matter very similar to the one described by you, the Board of Health on September 13, 1938, denied permission to manufacture frozen desserts in the cellar of premises then in question.

" In keeping with this ruling, permission for the manufacture of frozen desserts in the cellar at 444 Fifth Avenue, Manhattan, therefore, cannot be granted."

Petitioner had previously applied to respondent for a permit to conduct a bakery for the baking of cakes and rolls in its cellar and that had been granted.

The permit to manufacture frozen desserts was refused by respondent because of a regulation, numbered 5, which was adopted in accordance with the power conferred by the Legislature in section 1172 of the former city charter (L. 1901, ch. 466, as amd.) and section 558, subdivision b, of the present charter (effective January 1, 1938). That section authorized the respondent to adopt sections of the Sanitary Code and regulations thereunder " not inconsistent with the constitution or laws of this state." Similar language is contained in New York State Constitution, article 9, section 12. Regulation 5 prohibited the manufacture or exposing of frozen desserts in a cellar, with power in the Board of Health to make an exception under certain conditions as to cellars used for such purpose or purposes prior to July 11, 1933.

It is conceded in the answering affidavits of the sanitary engineer and deputy commissioner of respondent that the cellar has a cement floor, walls and ceiling; that the walls are covered with white tile; that the room in which the manufacture is to be carried on is ventilated by artificial means; that the air therein is cleaned, heated in the winter and cooled in the summer; that the room is rat-proofed; that it is " without an equal in the city."

The question presented then is, may the city on these facts forbid that which the State has specifically permitted. A municipality which is empowered to adopt health regulations may, in spite of general regulations by the State, adopt additional regulations or requirements where there is a real distinction between the city and other parts of the State. They must be based upon special conditions existing in the city. That is not the case here. The State has gone over the whole field. The State has designated an official who is empowered to grant a permit after he has made an inspection and found the premises to be sanitary. After the issuance of such a permit nothing remains to be done. The State having covered the whole field, the city may not make regulations of its own, inconsistent with the laws of the State, and prohibit the manufacture of frozen desserts in a cellar, even though the cellar is sanitary and

the manufacture of frozen desserts therein has been authorized by the State.

A general grant of local administrative power never confers authority to abrogate a general State statute.

In *Jewish Consumptives' Relief Society* v. *Town of Woodbury* (230 App. Div. 228; affd., 256 N. Y. 619) a town ordinance, in effect prohibiting the erection of a tuberculosis hospital within the town limits, was held void as in contravention of the Public Health Law (Cons. Laws, ch. 45), a State statute. Presiding Justice LAZANSKY said (on p. 234): " The authority of a municipality to abrogate State law is never implied or inferred. It is only derived from express grant, never from a general grant of power. A State policy may not be ignored by a municipality unless it is specifically empowered so to do in terms clear and explicit."

In *People ex rel. Kieley* v. *Lent* (166 App. Div. 550; affd., 215 N. Y. 626) the court said: " The intent that municipal corporations by ordinance can supersede the State law will not be inferred from general grants of power, nor will such authority be held to exist as an implied or incidental right. (Dillon Mun. Corp. [5th ed.] § 632.) As all municipal authority comes from the Legislature, the provisions of municipal charters, however broad, are subject to such restrictions as may be imposed by general laws." (See, also, *City of New York* v. *Maltbie*, 274 N. Y. 90; *People* v. *County of Westchester*, 282 N. Y. 224.)

No case in this court is contrary to what we have said here.

It is unnecessary in view of the conclusion we have reached, to pass upon the question whether Regulation 5 is unreasonable in view of the exception which the Board of Health is thereby authorized to grant.

The orders should be reversed, with costs in all courts, and the application granted.

FINCH, J. (dissenting). There is no conflict between the State Agriculture and Markets Law and the local regulation of the Board of Health of the City of New York. The Agriculture and Markets Law in general terms intrusts to the Commissioner of Agriculture and Markets the power to adopt rules and regulations establishing the

" sanitary regulations pertaining to the manufacture and distribution of frozen desserts, including the sanitary condition of buildings, grounds, and equipment where frozen desserts are manufactured " (§ 71-j). Pursuant to such authority, the Commissioner has promulgated a general regulation to the effect that without his written permission " no cellar shall be used as a frozen desserts plant " (Regulation 6). Here permission has been given by the State Commissioner. This consent merely removes the negative restriction prescribed by the State. It makes no affirmative grant to the licensee. In other words, the State laws and regulations do not say, " If you secure the permission of the Commissioner, you may manufacture frozen desserts anywhere;" but rather, " In view of the high degree of danger to the public health occasioned by the manufacture of frozen desserts, certainly you may *not* manufacture them in cellars without the Commissioner's approval in addition to whatever the appropriate local regulations, not to the contrary, may ordain." Neither the statute nor the regulation of the Commissioner contains any indication, express or inherent, of an intent to preclude additional regulation of conditions of manufacture by localities primarily interested therein when such additional regulations do not render impossible the enforcement of those prescribed by the State authority. Nor should such an intent be implied in a matter of so vital importance to the health of the inhabitants of a great metropolis. (See *People ex rel. N. Y., N. H. & H. R. R. Co.* v. *Willcox*, 200 N. Y. 423, 434.) Consequently, the regulation of the City Board of Health prohibiting all manufacture of frozen desserts in cellars within the city should not be held inconsistent with the State law.

A complete answer to the objection of unreasonableness is the obvious fact that ice cream and frozen desserts are easily contaminable, and when contaminated, are highly deleterious to the health of the consumer. A regulation of the Board of Health in the City of New York, therefore, which prohibits the manufacture of such products below the street level in order to eliminate the general possibility

of the danger of impurities arising from sewers or other underground channels, would seem eminently reasonable. Nor should the fact that in this particular instance unusual precautions have been taken so as to minimize danger from the anticipated sources, render the prohibition unreasonable. Since possible danger to the health of the public clearly exists, wide latitude must be accorded to local Boards of Health to counteract this danger and mere hardship in an individual case is no ground for holding invalid an appropriate enactment well within the local police power. (*Bayside Fish Flour Co.* v. *Gentry*, 297 U. S. 422; *Chicago, B. & Q. R. R. Co.* v. *Nebraska*, 170 U. S. 57; *Powell* v. *Pennsylvania*, 127 U. S. 678; 11 Am. Jur. 802.)

The order should be affirmed.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, SEARS and LEWIS, JJ., concur with CONWAY, J.; FINCH, J., dissents in opinion.

Orders reversed.