In the Matter of INTERBOROUGH NEWS COMPANY, Respondent, against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, et al., Appellants.

Argued March 14, 1940; decided April 26, 1940.

*William C. Chanler,* Corporation Counsel (*Sol Charles Levine, Arthur A. Segall* and *Milton Sandberg* of counsel), for appellants. The use of petitioner's gross receipts as the measure of its tax liability was proper as was the Comptroller's determination that petitioner buys and sells magazines on its own account and has neither received nor

exercised authority to contract, sell or collect for the account of the publishers or other persons who supplied it with magazines. (*Pictorial Review Co.* v. *Curtis Publishing Co.*, 255 Fed. Rep. 206; *People ex rel. Kohlman & Co.* v. *Law*, 239 N. Y. 346; *Matter of McNeel Marble Co.* v. *Graves*, 247 App. Div. 242; 275 N. Y. 601; *Gindre* v. *Kean*, 7 Misc. Rep. 582; *American Seeding Machine Co.* v. *Stearns*, 109 App. Div. 192; *Bessing* v. *Prince*, 52 Cal. App. 190; *Commercial Credit Co.* v. *Girard Nat. Bank*, 246 Penn. St. 88; *Stratton & Terstegge Co.* v. *Stiglitz Furnace Co.*, 258 Ky. 678; *Wheatman* v. *Hoe & Co.*, 158 Wash. 232; *Clarke* v. *Havard*, 11 Ga. 242; *Bell* v. *Riggs*, 34 Okla. 834; *Champion Spark Plug Co.* v. *Automobile Sundries Co.*, 273 Fed. Rep. 74; *Willcox & Gibbs Co.* v. *Ewing*, 141 U. S. 627; *Rawleigh Medical Co.* v. *Holcomb*, 126 Ark. 597.)

*Archie O. Dawson* and *John D. Mooney* for respondent. The contracts between the taxpayer and the publishers created a principal-agency relationship and not a vendor-vendee relationship. (*Curtis Pub. Co.* v. *Federal Trade Comm.*, 270 Fed. Rep. 881; 260 U. S. 568; *Collins* v. *American News Co.*, 34 Misc. Rep. 260; 68 App. Div. 639; *Meyer* v. *Price*, 250 N. Y. 370; *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373; *Straus* v. *Am. Publishers' Assn.*, 231 U. S. 222; *Boston Store* v. *American Graphophone Co.*, 246 U. S. 8; *United States* v. *General Electric Co.*, 272 U. S. 476.) The regular course of business conduct between the taxpayer and the publishers shows that the relationship between them is that of principal and agent and not that of vendor and vendee. (*United States* v. *General Electric Co.*, 272 U. S. 476.)

LOUGHRAN, J. This controversy is one respecting the liability of Interborough News Company for a deficiency gross receipts tax with penalties assessed against it by the Comptroller of the City of New York for the years 1933–1936, inclusive.

The assessment was made under Local Laws Nos. 9 and 17 (published as No. 18) of 1934, No. 32 of 1935, and No. 29

of 1936. Each of these laws exacted an annual excise equal to a stated per centum upon the gross receipts in excess of $15,000 derived during the preceding calendar year from any profession, vocation, trade, business or commercial activity (other than a financial business) exercised or carried on in the city of New York.

The taxpayer sets forth its business activities as follows: "1. It is the distributor in New York City and adjacent territory of magazines for a number of publishers, receiving the magazines in its warehouse, separating them into small lots for distribution to the newsdealers, delivering them to the thousands of newsdealers in this territory, collecting from the newsdealers the payments for the magazines and also the unsold copies, and remitting these payments and the unsold copies to the publishers, less its compensation for acting as distributor. 2. The taxpayer also operates as a separate department of its business the retail newsstands on the city-owned ' Independent Subway System ' in New York City, at which the taxpayer sells candy, newspapers, periodicals, maps, etc., exactly as a retail newsdealer would."

The taxpayer's sales department is an ordinary retail business and the tax imposed by the local laws upon the gross receipts therefrom for the period in question has been paid. This controversy has relation only to the so-called distribution department of the business of the taxpayer. The publishers hereinafter referred to include all publishers whose magazines were handled by the taxpayer save one (Macfadden Publications, Inc.).

At the Appellate Division it was held that all operations of the taxpayer in its distribution department were prosecuted by it as a mere agent of the publishers of those magazines which the taxpayer through that department had transmitted to local dealers. In that view, a tax was payable under the local laws upon so much only of the receipts of the distribution business as the taxpayer did not remit to the publishers but withheld as its compensation. So the court ruled. We now review its order on this appeal

therefrom by the Comptroller and the Treasurer of the city.

A single separate written contract regulated the entire relationship of the taxpayer to each of the publishers. The gist of the decision below is that the whole effect of each of these agreements was that thereby the taxpayer for all purposes was made the publisher's agent and nothing more. We do not agree that these contracts in themselves constituted proof that the receipts of the transactions that were carried on by the taxpayer through its distribution department were taken in by it for the publishers and not for its own account.

It was under the *same* contracts that the taxpayer obtained the magazines that were disposed of through the sales department of its business. As its counsel say, that sales department " is not a distribution agency but is an actual retail business." It is thus conceded that magazines which the taxpayer dealt out through its sales department were owned by it as vendee under its contracts with the publishers. This salient fact deadens the taxpayer's contention that under the same contracts it was a mere agent of the publishers when it was paid by local dealers for the magazines it had delivered to them through its distribution department. Not a word of any of these contracts gives a hint that the parties had in mind a purpose of the taxpayer so to act in a dual character. These considerations persuade us that the conventional phrases of the contracts had little or no significance in respect of the proposition here in issue.

We turn, therefore, to the evidence of conduct of the taxpayer in its handling of the magazines which it transmitted to local dealers through its distribution department. What follows has reference only to that branch of the taxpayer's business.

Stress was laid by the taxpayer on these facts: (a) The publishers fixed the prices for which their respective magazines were to be delivered by the taxpayer to local dealers and also the number of magazines to be delivered and the times of delivery; (b) employees of the publishers stationed

in the offices of the taxpayer had access to the taxpayer's files of orders of local dealers and watched over the employees of the taxpayer; (c) the magazines were not carried as an asset in the taxpayer's books but were entered in its stock record and no account was set up in the books to represent any payment due therefor.

On the other side, the Comptroller put the emphasis on these circumstances: (a) All agreements with local dealers were negotiated by the taxpayer in its own name; (b) all deliveries were made from its own warehouses on its own trucks by its own employees; (c) all payments were made to it and were acknowledged by it in its own name and were deposited in its own general bank account.

This conflict of evidence was to be composed by the Comptroller. We think it may not be said that the evidence preponderates against his conclusion that the taxpayer received the fund not as agent but for its own account. (See *People ex rel. Consolidated Water Co.* v. *Maltbie*, 275 N. Y. 357. Cf. *People ex rel. Jamaica Water Supply Co.* v. *Tax Commissioners*, 196 N. Y. 39.) More than that, each of the local laws here applicable says: " For the purpose of the proper administration of this local law and to prevent evasion of the tax hereby imposed, it shall be presumed that all receipts are subject to the tax until the contrary is established, and the burden of proving that any payment or consideration received by any person subject to the tax hereby imposed was not received in, or by reason of a sale made or service rendered or transaction had in the city of New York shall be upon the person who received it." (§ 3.) Clearly the Comptroller was warranted in his conclusion that this taxpayer did not meet the burden so cast upon it.

The order of the Appellate Division should be reversed and the determination of the Comptroller reinstated, with costs in this court and in the Appellate Division.

LEHMAN, Ch. J., FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Ordered accordingly.